IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>NATHANIEL TAYLOR MATLOCK,<br>Defendant. | Case No. CR16-2042<br>REPORT AND RECOMMENDATION |

On the 6th day of December 2016, this matter came on for hearing on the Motion to Suppress (docket number 18) filed by Defendant Nathaniel Taylor Matlock on November 16, 2016. The Government was represented by Assistant United States Attorney Timothy L. Vavricek. Defendant Nathaniel Matlock appeared in court and was represented by his attorney, Christopher J. Nathan.

## I. PROCEDURAL HISTORY

On September 15, 2016, Defendant was charged by indictment with one count of possession of a firearm by a felon. Defendant appeared on October 18 and entered a plea of not guilty. Trial was scheduled for December 19.

On November 16, Defendant filed the instant motion to suppress. The trial was then continued to January 23, 2017, with a status conference scheduled on December 28.

## II. RELEVANT FACTS

On July 24, 2016 at approximately 8:00 p.m., Waterloo Police Officer Troy Wilson conducted a traffic stop on a white Mercedes-Benz with a malfunctioning brake light. Officer Wilson is a member of the Waterloo Police Department's Violent Crime

Apprehension Team, whose primary focus is on gang-related violence and other serious crimes. Wilson was assisted at the traffic stop by Sergeant Richter, Officer Sullivan, and Officer Everett, who arrived within a minute or so.

Officer Wilson testified that he first observed the vehicle when it passed in front of him at an intersection. The driver and front-seat passenger, both females, looked at Wilson as they drove past. Wilson opined that the passenger said something to the driver "because she snapped her head to the left and looked directly at my squad car and that seemed a little bit unusual to me." Wilson followed the vehicle for several blocks before conducting the traffic stop.

Officer Wilson acknowledged on cross-examination that he had no prior information that the white Mercedes-Benz was involved in any unlawful activity. The name of the registered owner did not raise any concerns. Wilson had no information that the owner or the vehicle were involved in any shootings. Nothing about the owner's address "jumped out" at Wilson as being pertinent to any shootings or other violent incidents.

The driver was identified as Janae Robinson and the front-seat passenger was Ana Hilda. Officer Wilson asked Robinson for her driver's license and insurance information. Robinson admitted she was driving on a suspended license, and produced an expired insurance card. Wilson checked Robinson's driving status on the computer and confirmed she was suspended and revoked. Wilson also learned Robinson had a conviction for possession of controlled substances. Apparently, Robinson's driving privileges were revoked for that reason. Hilda, who apparently lives in Florida, reported that her driver's license was also suspended.

Officer Wilson testified he could see there were two males sitting in the backseat, "but due to the tinted windows I couldn't identify who they specifically were." Officer Sullivan asked the backseat passengers to produce identification. They both produced Iowa identification cards, but did not have driver's licenses. When viewing their identification

cards, Wilson recognized Defendant Nathaniel Matlock.[1] According to Wilson, "I recognized him through several interactions with him in the past ranging from weapons violations and shots fired calls." Wilson also believed Defendant was "actively associated" with gang members. Wilson testified he knew Defendant "to carry weapons and go armed."

Because none of the four occupants of the vehicle had a valid driver's license, officers decided the vehicle would be towed. All of the occupants, including Defendant, were then asked to exit the vehicle. When Defendant opened the door, Officer Wilson recognized the smell of alcohol coming from the car and could see a partially empty open bottle of liquor sitting between him and the other backseat passenger, Sadorieous Collins.

After Officer Wilson asked Defendant to exit the vehicle, Wilson told Defendant to place his hands up on the car. According to Wilson, Defendant said "for what, I'm just a passenger." Wilson again asked Defendant to put his hands on the car, and Defendant complied. Wilson acknowledged that Defendant's hands weren't "trembling," but opined that Defendant's hesitation to place his hands on the car suggested "nervousness" and was "usually not something commonly we see with people that aren't concealing something." Wilson testified Defendant had a smell of alcohol on his breath, but did not appear to be "impaired."

Officer Wilson then conducted a pat-down of Defendant's person for weapons. Wilson believed a pat-down was necessary for his safety because of Defendant's "known violent tendencies and also firearm violence." During the pat-down, Wilson discovered a pocket knife in Defendant's right pocket and a firearm in Defendant's waistband.

---

[1] On cross-examination, Officer Wilson was asked whether Officer Sullivan told him that Defendant "had given him a false name." Wilson acknowledged that Sullivan did not tell Wilson that Defendant had given Sullivan a false name.

According to Officer Wilson, the vehicle stop occurred in an area "plagued with gun violence." Wilson testified authorities have been called to the area for numerous fights, shots fired calls, homicides, and other shootings. Robinson told Wilson that they were headed to a nearby liquor store, which Wilson testified was in a high crime area. After Wilson removed Defendant from the car and patted him down, Hilda confirmed they were headed to the liquor store.

Officer Wilson testified there was a homicide that occurred one week earlier in the 700 to 800 block of Logan Avenue. The victim was associated with the L Block street gang. Apparently, however, the shooter was a member of the Del Mob gang. That is, the shooting which occurred in that neighborhood one week earlier apparently did not involve the Black Flag Mafia, with whom Defendant is allegedly associated.

When Officer Wilson initiated the traffic stop, he knew that in May 2016 — just two months earlier — an officer received a report that Defendant got out of a car, brandished a pistol, cocked the gun back, and continued to display the weapon until a person called the police. According to reports, the incident in May 2016 involved a call from Defendant's ex-girlfriend, who reported that she had an altercation with Defendant's new girlfriend. During the altercation, Defendant allegedly exited the new girlfriend's vehicle, brandished a pistol in a threatening manner toward his ex-girlfriend, but then got back in the vehicle and drove off after she threatened to call the police.

Officer Wilson also knew that two months earlier — in March 2016 — officers had been called in response to a shots fired call where Defendant was believed to be in a car which was being shot at and was returning fire. Wilson assisted in the investigation of the shooting incident in March 2016. The vehicle in which Defendant was a passenger showed bullet damage and witnesses testified that occupants in the vehicle returned fire. Defendant was apparently in the front seat, but a witness told authorities that he couldn't tell if the shots came from the front seat or backseat. Two occupants of the vehicle took off running

4

when officers arrived, while Defendant remained on the scene. No firearm was found on Defendant's person or in the car. Wilson conceded that typically the shooters will run away rather than stay at the scene.

Finally, Wilson was aware of an incident in March 2014, where an informant stated that Defendant was involved in a shots fired incident.

## III. DISCUSSION

Defendant does not contest the validity of the vehicle stop. *See* Iowa Code § 321.387 (requiring all lighting equipment originally manufactured on a motor vehicle to be kept in working condition); *United States v. Martin*, 411 F.3d 998 (8th Cir. 2005) (finding that a traffic stop of a vehicle having a non-functioning brake light was objectively reasonable). Defendant also concedes he could constitutionally be ordered to exit the vehicle. *See Maryland v. Wilson*, 519 U.S. 408, 415 (1997) ("[A]n officer making a traffic stop may order passengers to get out of the car pending completion of the stop."). In addition, the law permits officers to "perform a 'patdown' of a driver and any passengers upon reasonable suspicion that they may be armed and dangerous." *United States v. Oliver*, 550 F.3d 734, 737 (8th Cir. 2008) (quoting *Knowles v. Iowa*, 525 U.S. 113, 118 (1998)). Defendant's sole argument in this case is that "[t]he *Terry* frisk was made without reasonable suspicion that the Defendant was armed and dangerous."[2]

The law in this regard is well-established. The "sole justification" of a pat-down search is "the protection of the police officer and others nearby." *Terry v. Ohio*, 392 U.S. 1, 29 (1968). The *Terry* Court concluded that for the protection of the police officer, he may search for weapons "where he has reason to believe that he is dealing with an armed and dangerous individual." *Id.* at 27. *See also United States v. Davison*, 808 F.3d 325, 329 (8th Cir. 2015). The Court employs an objective test in determining whether an

---

[2] Defendant's Brief (docket number 18-1) at 3.

officer may have reasonable suspicion that a person with whom they are dealing might be armed and dangerous. *United States v. Preston*, 685 F.3d 685, 689 (8th Cir. 2012). In determining whether reasonable suspicion exists, the Court considers "the totality of the circumstances in light of the officers' experience and specialized training." *Id.* "A pat-down is permissible if a 'reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.'" *Id.* (quoting *United States v. Horton*, 611 F.3d 936, 941 (8th Cir. 2010) (in turn quoting *Terry*, 392 U.S. at 27.).

With these general principles in mind, I now turn to the facts in the instant action. *Oliver*, 550 F.3d at 735 (noting that determining whether an officer had reasonable suspicion to believe a person was armed and dangerous is a "fact-intensive issue of law"). Officer Wilson acknowledged that when conducting the traffic stop for a malfunctioning brake light, he had no prior information that the white Mercedes-Benz was involved in any unlawful activity. When the backseat passengers were asked to produce identification, however, Wilson recognized Defendant Nathaniel Matlock. Wilson knew of a reported incident two months earlier, in May 2016, when Defendant allegedly exited his new girlfriend's vehicle and brandished a pistol in a threatening manner toward his ex-girlfriend. Wilson also knew that two months before that, in March 2016, officers responded to a call where Defendant was in a car being shot at and returning fire. It was unknown whether or not Defendant was the shooter. Wilson was also aware of an incident two years earlier, in March 2014, where an informant stated that Defendant was involved in a shots fired incident.

The vehicle stop occurred in a high crime area which, according to Officer Wilson, was "plagued with gun violence." *Davison*, 808 F.3d at 330 (the Court may consider whether the encounter occurred in a "high-crime area"). A homicide occurred in that area one week earlier. Wilson believed that Defendant is associated with the Black Flag Mafia street gang, although the shooting which occurred one week earlier apparently involved

two other street gangs. Gang affiliation is a factor which the Court may consider in determining whether it was reasonable to believe Defendant was armed and dangerous. *United States v. Feliciano*, 45 F.3d 1070, 1074 (7th Cir. 1995) ("Knowledge of gang association and recent relevant criminal conduct, while of doubtful evidentiary value in view of the strictures against proving guilt by association or by a disposition based on past criminal acts, is a permissible component of the articulable suspicion required for a *Terry* stop.") (quoted with approval in *United States v. Roelandt*, 827 F.3d 746, 749 (8th Cir. 2016)). When Wilson instructed Defendant to place his hands on the car, Defendant did not immediately comply, which Wilson found suspicious.

The level of suspicion necessary to justify a protective pat-down search "is considerably less than proof of wrongdoing by a preponderance of the evidence" and "is obviously less demanding than that for probable cause." *United States v. Roggeman*, 279 F.3d 573, 578 (8th Cir. 2002) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). Given all of the circumstances, I believe that a "reasonably prudent man" would be warranted in believing that his safety or the safety of others may be in danger. *Terry*, 392 U.S. at 27. Accordingly, I believe Officer Wilson was authorized to conduct a protective pat-down for officer safety.

## IV. RECOMMENDATION

For the reasons set forth above, I respectfully recommend that Defendant's Motion to Suppress (docket number 18) be **DENIED**. The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court. *The parties are reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections." Accordingly, if the*

parties are going to object to this Report and Recommendation, they must promptly order a transcript of the hearing held on November 16, 2016.

DATED this 16th day of December, 2016.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA