**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION**

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

NATHANIEL TAYLOR MATLOCK,

    Defendant.

No. 16-CR-2042-LRR

**ORDER**

_____

*TABLE OF CONTENTS*

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

II.    RELEVANT PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . *2*

III.    STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . *3*

IV.    RELEVANT FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . *3*

    A.    *The Traffic Stop* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *3*
    B.    *Previous Incidents* . . . . . . . . . . . . . . . . . . . . . . . . . . . *6*

V.    ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *7*

    A.    *The Suppression Report and Recommendation* . . . . . . . . . . . . . . . *7*
    B.    *Plea Report and Recommendation* . . . . . . . . . . . . . . . . . . . . *13*

VI.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *13*

*I. INTRODUCTION*

The matters before the court are Defendant Nathaniel Taylor Matlock's Objections to Report and Recommendation ("Objections") (docket no. 43), timely filed in response to United States Chief Magistrate Judge Jon S. Scoles's Report and Recommendation

("Suppression Report and Recommendation") (docket no. 29), which recommends that the court deny Defendant's Motion to Suppress ("Motion") (docket no. 18) and United States Chief Magistrate Judge C.J. Williams's[1] Report and Recommendation (docket no. 40) ("Plea Report and Recommendation"), which recommends that the court accept Defendant's conditional guilty plea.

## II. RELEVANT PROCEDURAL BACKGROUND

On September 15, 2016, a grand jury returned a one-count Indictment (docket no. 2) charging Defendant with possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). On November 16, 2016, Defendant filed the Motion. On November 28, 2016, the government filed a Resistance (docket no. 24). On December 6, 2016, Judge Scoles held a hearing on the Motion. *See* Dec. 6, 2016 Minute Entry (docket no. 25). Defendant appeared in court with his attorney, Christopher Nathan. Assistant United States Attorney Timothy Vavricek represented the government. On December 16, 2016, Judge Scoles issued the Suppression Report and Recommendation, which recommends that the court deny the Motion. On December 28, 2016, Defendant entered a conditional plea of guilty to the offense alleged in the Indictment. *See* Dec. 28, 2016 Minute Entry (docket no. 36). On December 30, 2016, Judge Williams issued the Plea Report and Recommendation, which recommends that the court accept Defendant's conditional guilty plea. On January 13, 2017, Defendant filed the Objections. The government has not filed a response to the Objections, and the time for doing so has passed. No party has filed objections to the Plea Report and Recommendation. The Suppression Report and Recommendation and the Objections, as well as the Plea Report and Recommendation, are fully submitted and ready for decision.

---

[1] Judge Scoles retired on December 31, 2016, at which time Judge Williams became the Chief Magistrate Judge for the Northern District of Iowa.

## III. STANDARD OF REVIEW

When a party files a timely objection to a magistrate judge's report and recommendation, "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge must consider de novo any objection to the magistrate judge's recommendation."); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (noting that a district judge must "undertake[] a de novo review of the disputed portions of a magistrate judge's report and recommendations"). "A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district judge may accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions."). It is reversible error for a district court to fail to engage in a de novo review of a magistrate judge's report when such review is required. *See Lothridge*, 324 F.3d at 601. Accordingly, the court reviews the disputed portions of the Report and Recommendation de novo.

## IV. RELEVANT FACTUAL BACKGROUND

### A. The Traffic Stop

On or about July 24, 2016 shortly after 8:00 p.m., Officer Troy Wilson of the Waterloo Police Department initiated a traffic stop of a white Mercedes-Benz ML350 due to a malfunctioning rear brake light.[2] *See* Hearing Transcript (docket no. 41) at 3. Officer Wilson has been an officer with the Waterloo Police Department since May of 2011 and serves on the Violent Crime Apprehension Team, which primarily focuses on gang-related

---

[2] The traffic stop was recorded on Officer Wilson's body camera as well as the dashboard camera in Officer Wilson's squad car. *See* Government Exhibit 1 (docket no. 25-2); Defense Exhibit A (docket no. 25-3).

3

violence and activity. *Id.* Three other Waterloo Police Department law enforcement officials assisted Officer Wilson during the traffic stop. *Id.* at 3-4.

Officer Wilson's attention was initially drawn to the vehicle when it passed in front of his squad car at an intersection of what he described as a high crime area, at which point the driver and passenger of the vehicle looked directly at him. *Id.* at 4, 6. Officer Wilson testified that it appeared as if the passenger said something to the driver as they were approaching the intersection because the driver's head "snapped" toward him as the vehicle passed through the intersection.[3] *Id.* at 4. Officer Wilson proceeded to follow the vehicle as it traveled in what he described as a "roundabout" way for several blocks before Officer Wilson stopped the vehicle. *Id.*

The driver of the vehicle was ultimately identified as Janae Robinson and the female passenger was identified as Ana Hilda. *Id.* Neither Robinson nor Hilda had a valid driver's license. During his interaction with Robinson and Hilda, Officer Wilson was also able to see two male passengers sitting in the back seat of the vehicle, unidentifiable because of the vehicle's tinted windows. Another officer, Officer Sullivan, collected the male passengers' identification cards and showed them to Officer Wilson. *Id.* at 5.

Upon viewing the identification cards, Officer Wilson recognized Defendant as one of the passengers. *Id.* Officer Wilson stated that he recognized Defendant from several past interactions including weapons violations and shots fired calls. He testified that he knew Defendant to be actively associated with members of the Black Flag Mafia gang but that he did not know whether Defendant was "signed up" as a member of the gang. *Id.* He also testified that he knew Defendant to carry firearms. Officer Wilson stated that he found it unusual that Defendant was traveling through the particular neighborhood because it was associated with a gang that had past disagreements with the Black Flag Mafia. *Id.*

---

[3] On cross examination, Officer Wilson admitted that he did not include this detail in his police report of the incident.

On cross examination, Officer Wilson admitted that the Waterloo Police Department had received no reports that criminal activity had occurred in the area that day. *Id.* at 9-10.

Because the officers determined that the vehicle would have to be towed from the scene, Defendant and the other male passenger were asked to exit the vehicle and they complied. *Id.* at 5. When Defendant exited the vehicle, Officer Wilson smelled alcohol emanating from inside the vehicle and an open container of alcohol was seized. However, Defendant did not appear to be impaired. *Id.* at 9. After Defendant exited the vehicle, Officer Wilson frisked Defendant. *Id.* at 6. Regarding Officer Wilson's decision to frisk Defendant, the government elicited the following testimony:

> Q. Sir, based on your experience and training as an officer, would it have been safe for you, knowing what you knew about Mr. Matlock at the time, to allow him to get out of the car and without frisking him allow — allow him to freely move about the area?
>
> . . .
>
> A. No; it would be unsafe for us to do that.
>
> Q. Why?
>
> A. Because of his history and known activity with firearms, that wouldn't be safe for us to let him just walk around with us making sure he didn't have a weapon on him.

*Id.* Officer Wilson conceded that no law enforcement official observed Defendant or any other passengers make any furtive movements and Defendant did not appear nervous. *Id.* at 9. However, Officer Wilson testified that Defendant hestitated briefly before placing his hands on the vehicle to submit to the pat down, stating that he was just a passenger. Officer Wilson interpreted that protest as slight nervousness, because it indicated to him that Defendant may be concealing something. *Id.* Officer Wilson recovered a pocketknife from Defendant's pocket and a firearm from Defendant's waistband. *Id.* at 6.

5

## B. Previous Incidents

Officer Wilson also testified regarding his knowledge of the following specific instances of Defendant's contact with law enforcement officers.

In March of 2014, an informant reported to the Waterloo Police Department that Defendant had been involved in a shots fired incident in Waterloo. *Id*. at 5.

On March 28, 2016, Officer Wilson and several other law enforcement officers were dispatched in response to a shots fired call in Waterloo involving a vehicle that was being shot at and from which shots were being fired. Officer Wilson testified that Defendant was believed to be involved in such incident. *Id*. at 10. In particular, Officer Wilson testified that law enforcement officials believed that Defendant was in the car at the time of the shooting incident and that Defendant remained on the scene after the police arrived. *Id*. at 11. However, law enforcement did not receive specific information that Defendant actually discharged a firearm at that time and no firearms were found on Defendant's person. *Id*. When questioned by defense counsel on whether it was common for shooters involved in a shots fired incident to remain on the scene, Officer Wilson admitted that shooters generally flee. *Id*.

On or about May 11, 2016, the Waterloo Police Department received a report that Defendant's girlfriend was involved in a verbal altercation with Defendant's ex-girlfriend. *Id*. at 5. During the altercation, Defendant exited his girlfriend's vehicle and brandished a pistol at his ex-girlfriend, Defendant also cocked the pistol and continued to display the firearm until the ex-girlfriend called the police. On cross examination, Officer Wilson testified that he did not have information regarding the reliability of Defendant's ex-girlfriend because another officer had conducted the investigation into the incident. Furthermore, Officer Wilson conceded that he has encountered situations in which ex-girlfriends are not reliable witnesses against their ex-boyfriends. *Id*. at 11. Officer Wilson further testified that Defendant's ex-girlfriend did not pursue a no-contact order after the

incident, but stated that it is common for victims to elect not to pursue such an order. *Id*. at 12.

## V. ANALYSIS

In the Objections, Defendant does not contest the validity of Officer Wilson's initial stop of the vehicle. Instead, Defendant argues that Judge Scoles erred in finding that the frisk, leading to the discovery of the firearm, was lawful. In particular, Defendant argues that certain factual findings in the Suppression Report and Recommendation were erroneous and impacted Judge Scoles's ultimate finding that Officer Wilson had reasonable suspicion to believe that Defendant was armed and dangerous, justifying the frisk. *See generally* Brief in Support of the Objections (docket no. 43-1). The court shall first address the factual objections to the Suppression Report and Recommendation and then determine whether Judge Scoles erred in finding that the frisk was constitutionally permitted. The court shall then address the Plea Report and Recommendation.

### A. *The Suppression Report and Recommendation*

Defendant suggests that Judge Scoles improperly relied on the alleged "head snap" that occurred when the passenger of the vehicle noticed Officer Wilson in his squad car. *Id*. at 1. Defendant argues that "Officer Wilson did not include that detail in his report" and "objects to any reliance on the 'head snap'" as a result. *Id*. At the hearing, Judge Scoles questioned the importance of the head snap, indicating that he viewed it as more probative of the lawfulness of the traffic stop, which Defendant concedes was proper, than of the lawfulness of the frisk. The court agrees with Judge Scoles. The Suppression Report and Recommendation does not rely on the head snap, and the court shall likewise decline to rely on the head snap. Accordingly, the court shall sustain the Objections to the extent Defendant "objects to any reliance" on the head snap.

Defendant further argues that Judge Scoles erred in characterizing the area in which the vehicle was stopped as one "plagued with gun violence." *Id*. at 2. Defendant

7

specifically disputes this fact and cites to police records detailing the calls for service that the Waterloo Police Department received for the area near the traffic stop from January 1, 2016 to July 1, 2016. *See* Defense Exhibit B (docket no. 27). The court observes that none of the calls for service produced by Defendant involve any gun-related crimes. However, at the hearing, Officer Wilson also testified that a gun-related homicide occurred in the area one week prior to the incident involving Defendant, which would not be reflected on Defendant's exhibit. *See* Transcript at 10. Furthermore, the government provided police records detailing the number of calls for service that the Waterloo Police Department received for a broader area comprised of grids adjacent to, and including, the one offered by Defendant from November 1, 2015 through April 14, 2016. *See* Government Exhibit 4 (docket no. 26-2). Those records reflect that nearly 5,000 calls for service were received from such areas during that time period. *See id.*; *see also* Transcript at 13 ("[A police records custodian] would testify that she was subpoenaed to produce records by the defendant initially within a half-mile range of the incident in question and initially produced . . . 4,916 calls for service."). Thus, regardless of whether the area could properly be characterized as "plagued by gun violence," there is sufficient evidence in the record to conclude that the area in which the traffic stop occurred was an area of high incidents of crime, a fact which Officer Wilson was permitted to consider in determining whether a frisk was necessary. *See, e.g.*, *United States v. Roelandt*, 827 F.3d 746, 748 (8th Cir. 2016) (recognizing that police were permitted to conduct a stop and frisk where "[a] known felon and gang member . . . was walking quickly through a high-crime area and suspiciously looking around").

Defendant generally argues that the totality of the circumstances does not support the stop and frisk because it "was not supported by reasonable suspicion." *See* Brief in Support of the Objections at 3-7. "In conducting [an investigatory] stop, the officer may make a protective pat-down search 'if he has a reasonable, articulable suspicion that the

person may be armed and presently dangerous.'" *United States v. Davison*, 808 F.3d 325, 329 (8th Cir. 2015) (quoting *United States v. Roggeman*, 279 F.3d 573, 577 (8th Cir. 2002)); *see also Terry v. Ohio*, 392 U.S. 1, 30 (1968). "The officer need not know for certain that the suspect is armed; instead, a search is permitted if a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of other was in danger." *United States v. Trogdon*, 789 F.3d 907, 910 (8th Cir. 2015) (internal quotation marks omitted) (quoting *United States v. Horton*, 611 F.3d 936, 941 (8th Cir. 2010)). "The concept of reasonable suspicion is 'not readily, or even usefully, reduced to a neat set of legal rules.'" *United States v. Woods*, 829 F.3d 675, 679 (8th Cir. 2016) (quoting *Illinois v. Gates*, 462 U.S. 213, 232 (1983)). Instead, courts examine the totality of the circumstances, "taking into account an officer's deductions and rational inferences resulting from relevant training and experience." *United States v. Fields*, 832 F.3d 831, 834 (8th Cir. 2016) (quoting *Horton*, 611 F.3d at 940).

Defendant challenges Judge Scoles's finding that Officer Wilson's frisk was not supported by reasonable suspicion on numerous grounds: (1) the incident involving Defendant's ex-girlfriend cannot support reasonable suspicion because of questions regarding the ex-girlfriend's credibility, especially where the police report states "do not give copies to defense," *see* Brief in Support of the Objections at 2-4; (2) the March 28, 2016 shooting incident cannot support reasonable suspicion because there is no evidence that Defendant discharged a firearm, *see id.* at 4; (3) the March 2014 incident does not support reasonable suspicion because the information is uncorroborated and stale, *id.* at 4-5; (4) the area of arrest is not a "high crime" area and, even if it is, Defendant's mere presence therein is insufficient to support reasonable suspicion because he was merely passing through as a passenger in a vehicle, *id.* at 5;[4] (5) Defendant's association with gang

---

[4] The court finds that Officer Wilson was entitled to rely on the fact that the incident
(continued…)

9

members does not support reasonable suspicion because there is no evidence that Defendant was actually a gang member and mere association with gang members does not give rise to reasonable suspicion, *id.* at 5-6; and (6) any slight hesitation in Defendant's submission to the frisk does not support reasonable suspicion, *id.* at 6.

After examining the totality of the circumstances, and after conducting a de novo review of the portions of the objected-to portions of the Suppression Report and Recommendation, the court finds that Officer Wilson had reasonable suspicion to believe that Defendant was armed and that the frisk was constitutional. Significantly, Officer Wilson recognized Defendant from his experience with the Violent Crime Apprehension Team and knew Defendant to associate with gang members. The fact that Defendant was in fact a member of a gang does not foreclose reliance on Defendant's social ties to local gangs when developing reasonable suspicion. Defendant is correct that the defendant in *United States v. Roelandt* was a known gang member. *See id.*; *see also Roelandt*, 827 F.3d at 748 (referring to the defendant as a "known felon and gang member"). However, other cases have recognized mere gang "affiliation" is a consideration that law enforcement officers may consider in determining whether reasonable suspicion exists. *See United States v. Cornelius*, 391 F.3d 965, 967 (8th Cir. 2004); *see also United States v. Feliciano*, 45 F.3d 1070, 1074 (7th Cir. 1995) ("Knowledge of gang association and recent relevant criminal conduct, while of doubtful *evidentiary* value in view of the strictures against proving guilt by association or by a predisposition based on past criminal acts, is a permissible component of the articulable suspicion required for [an investigatory] stop."). Moreover, the court views the distinction between being a gang member and associating with gang members to be an exercise in semantics in this instance—regardless of whether Defendant was in fact a gang member, his ties to gang members were

---

⁴(…continued)
occurred in a so-called "high crime" area for the reasons stated above.

apparently close and exclusive enough that Officer Wilson knew him to associate with members of one specific gang in the Waterloo area. *See* Transcript at 5. Defendant does not dispute that he does, in fact, associate with such persons, and Officer Wilson's knowledge of Defendant's ties to such persons, supports reasonable suspicion.

Officer Wilson also had knowledge of three gun-related incidents involving Defendant—the shots-fired incident in March of 2014, the shots-fired incident on March 28, 2016 and the incident involving Defendant's ex-girlfriend on May 11, 2016. Though Defendant attacks the factual bases and reliability of each of those incidents, the court finds that Officer Wilson could consider them when determining whether reasonable suspicion existed. There is no dispute that Defendant was in the vehicle at the time shots were fired during the March 28, 2016 incident. Nor is there any dispute that Defendant associated with others in the vehicle who may have been the shooters.[5] The court further notes that neither Officer Wilson nor the government purport to prove the factual underpinnings of those incidents. Rather, they argue, and the court agrees, that Officer Wilson was entitled to consider those incidents in determining whether a protective frisk was necessary. Regardless of whether Defendant was actually a shooter in the March 28, 2016 and regardless of the credibility of his ex-girlfriend, these incidents provide a "particularized and objective basis" for Officer Wilson to conduct a frisk to ensure his safety and the safety of those around him. *See United States v. Williams*, 796 F.3d 951, 957 (8th Cir. 2015) (quoting *United States v. Robinson*, 670 F.3d 874, 876 (8th Cir. 2012)). Even if the evidence justifying the frisk does not rise to the level required to prove probable cause, the basis for the frisk certainly surpasses a "mere hunch." *See id.* ("Reasonable suspicion must be supported by more than a mere hunch, but the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying

---

[5] In fact, Defendant implies that such other occupants were, indeed, the shooters in that incident. *See* Brief in Support of the Objections at 4.

11

the preponderance of the evidence standard."); *see also Roggeman*, 279 F.3d at 578 (describing the level of objective justification required to support reasonable suspicion as "minimal" (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)).[6]

Defendant's arguments ultimately fail because he essentially "challenges the sufficiency of each factor in isolation from the rest." *United States v. Quinn*, 812 F.3d 694, 698 (8th Cir. 2016). This "divide-and-conquer analysis" is insufficient when considering the totality of the circumstances. *Id.* (quoting *United States v. Arvizu*, 534 U.S. 266, 274 (2002)). Even if reliance on any individual factor would be insufficient, in examining the totality Officer Wilson's knowledge of Defendant, he was justified in performing a protective frisk. *See id.* ("An officer may have reasonable suspicion . . . based on a combination of factors even where no single factor, considered alone, would justify a stop."). This is doubly true when considering that the entire purpose of the investigatory frisk "is the protection of the police officer and others nearby." *Terry*, 392 U.S. at 29. In this instance, there is no dispute that Defendant associates with known gang members and that he had at least been present at a recent shooting and had been linked to other firearm-related incidents in the past. Officer Wilson had knowledge of these circumstances, which gave rise to reasonable suspicion that Defendant was armed and dangerous. Accordingly, the court shall overrule the Objections and adopt the Suppression Report and Recommendation.

---

[6] As to Defendant's final argument, the court shall disregard any nervousness Defendant may have exhibited after being asked to place his hands on the vehicle. Such nervousness may not permissibly impact reasonable suspicion because it occurred after Officer Wilson made the decision to frisk Defendant. *Cf., e.g.*, *United States v. Hughes*, 517 F.3d 1013, 1019 (8th Cir. 2008) (noting that information obtained after a frisk cannot support reasonable suspicion).

### B. Plea Report and Recommendation

As the court has noted, no party has filed objections to the Plea Report and Recommendation. It appears to the court upon review of Judge Williams's findings and conclusions that there is no ground to reject or modify them. Therefore, the court shall accept the Plea Report and Recommendation.[7]

### VI. CONCLUSION

In light of the foregoing, it is **ORDERED**:

(1) The Objections (docket no. 43) are **OVERRULED**;

(2) The Suppression Report and Recommendation (docket no. 29) is **ADOPTED**;

(3) The Motion (docket no. 18) is **DENIED**;

(4) The Plea Report and Recommendation (docket no. 40) is **ADOPTED**; and

(5) Defendant's plea of guilty is **ACCEPTED**.

**IT IS SO ORDERED.**

**DATED** this 7th day of February, 2017.

_____
LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA

---

[7] The court notes that *United States v. Cortez-Hernandez*, No. 15-2314, 2016 WL 7174114, at *3 (8th Cir. Dec. 9, 2016) (per curiam), suggests that a Defendant may have the right to de novo review of a magistrate judge's recommendation to accept a plea of guilty even if no objection is filed. *But see* 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b). The district court will undertake a de novo review of the Plea Report and Recommendation if a written request for such review is filed within fourteen days after this Order is filed.